UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH DAKOTA
SOUTHERN DIVISION

| | | |
|---|---|---|
| CARIE C. SANOW, | ) | Civil No. 18-4173 |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | **COMPLAINT** |
| | ) | (Jury Trial Demanded) |
| SAMMONS FINANCIAL GROUP, INC., | ) | |
| | ) | |
| Defendant. | ) | |

Plaintiff, Carie C. Sanow, by and through her attorneys, Jennifer Suich Frank and Cheri S. Raymond of Lynn, Jackson, Shultz & Lebrun, P.C., states and alleges as follows:

## JURISDICTION, VENUE AND PARTIES

1) This is an employment discrimination, failure to accommodate, and retaliation action arising under the Americans with Disabilities Act of 1990, as amended by the ADA Amendments Act of 2008, (hereinafter the "ADA"), 42 U.S.C. §12101 et. seq., as well as an action involving the application of the Family and Medical Leave Act of 1993 ("FMLA"), 29 U.S.C. §2601 et seq.

2) Plaintiff Carie C. Sanow (hereinafter "Sanow") invokes the jurisdiction of this Court pursuant to 42 U.S.C. §§12117 and 2000e-5(f), 29 U.S.C. §2617, 28 U.S.C. §§1331, 1337 and 1343(a)(4).

3) The claims asserted in this action arose within this district and the alleged discrimination, retaliation, and damage occurred in this district. Venue is proper in accordance with 29 U.S.C. §2617, 28 U.S.C. §1391(b) and 42 U.S.C. §§12117 and

2000e-5(f)(3).

4) This Court has jurisdiction over pendant state law claims alleged herein pursuant to 28 U.S.C. §1367.

5) Sanow requested a Right to Sue letter from the U.S. Equal Employment Opportunity Commission ("EEOC") in August 2018 and received her Notice of Right to Sue on October 10, 2018. A true and correct copy of the Notice of Right to Sue is attached as Exhibit A. Sanow is instituting this action within the requisite 90-day period indicated in the Notice.

## GENERAL ALLEGATIONS

6) Plaintiff Sanow is an adult resident of Lincoln County, in Sioux Falls, South Dakota.

7) Defendant Sammons Financial Group, Inc. (hereinafter "Sammons") is a Delaware company doing business in Sioux Falls, South Dakota (among other states), as Sammons Financial Group, Inc.

8) Sammons employed Sanow at its Sioux Falls, South Dakota, location between March 7, 2011, and March 7, 2017.

9) Sanow was an "employee" of Sammons at all material times hereto.

10) During her tenure, Sanow was employed as the Policy Billing and Accounting Manager.

11) Sammons Financial Group was a "covered employer" under both the FMLA and Title I of the ADA at all material times hereto.

12) Sanow had both a serious health condition as defined under the FMLA and a disability as defined under the ADA in the last several months of her employment with Sammons.

13) At all times relevant to this Complaint, Sanow was an "eligible employee" as defined by the FMLA, 29 U.S.C. §2611.

14) Sanow reported to John Robbins ("Robbins"), who was her supervisor during her last five years of employment.

15) During late summer and early fall of 2016, Sanow began experiencing severe depression, anxiety, and panic attacks.

16) Sanow told both Robbins and Robbins's supervisor, Nick Nelson ("Nelson"), that she was experiencing depression, stress, and anxiety during their regularly-scheduled meetings before November 2016.

17) Sanow's disability and serious health condition resulted in her differential treatment as compared to other non-disabled supervisors.

18) Sanow also talked to Maureen Ulmer ("Ulmer") in Human Resources ("HR") in or about late November 2016, to inform her that she was experiencing depression and anxiety and that it was impacting her negatively both professionally and personally.

19) Sanow did not know what to do and told Ulmer that she either needed to take a leave of absence or a week of PTO.

20) Ulmer told Sanow to do what was best for her.

21) Ulmer did not provide any direction to Sanow, and did not engage in the interactive process with Sanow regarding the potential for any reasonable accommodations as required under the ADA.

22) Sanow saw her physician, Dr. Stephanie Broderson, who strongly recommended that Sanow take immediate leave from work due to her anxiety and depression.

23) On December 6, 2016, Sanow told Kathy Wynia ("Wynia"), the Benefits Specialist at Sammons, that Dr. Broderson had strongly recommended she take immediate leave.

24) Wynia began initiating paperwork for Sanow's FMLA leave.

25) Wynia and Sanow met on December 9, 2016, when Wynia asked Sanow if it was necessary for her to start her FMLA leave on Monday, December 12, 2016, and Sanow replied that Dr. Broderson wanted her to take leave immediately.

26) Sanow told Wynia that she was not comfortable talking to Robbins or Nelson about her treatment with Dr. Broderson or her medical leave.

27) Wynia promised Sanow that she or HR would notify them of the approved FMLA leave of absence.

28) Sanow also talked to Ulmer in HR on December 9, 2016, and told her that Dr. Broderson had recommended immediate FMLA leave, it would begin on Monday, December 12, and Wynia was processing the FMLA paperwork.

29) On December 16, 2016, Sammons issued a letter and a statement of

4

conditions for FMLA leave. On page 3 of the document, various roles and responsibilities were explained.

30) The document clearly states that FMLA leave status is communicated to management by the Benefits Specialist, not the employee.

31) An employee going out on FMLA leave is not required to review the business needs and strategize the work based on staff levels.

32) Sanow did not need to notify her managers of the leave of absence or the need for the leave of absence, either under the FMLA or under Sammons's policies.

33) Sanow needed the full 12 weeks of leave as allowed by FMLA.

34) The FMLA leave was originally set to end January 6, 2017, but was extended to February 6, 2017. The leave was then extended again for another four weeks on the recommendation of Dr. Broderson.

35) Sanow returned to work at Sammons on March 6, 2017.

36) Sanow asked for a meeting with Robbins so that she could get a status update.

37) On March 6, 2017, Robbins and Sanow met in person with Nelson joining via phone.

38) Robbins knew that Sanow had been on FMLA leave.

39) Despite this knowledge, Robbins reprimanded Sanow during the meeting for taking a medical leave of absence.

40) Robbins chastised Sanow for going on medical leave without telling him

5

and without giving him updates on the status of her various projects before she left.

41) Robbins also ordered Sanow to meet with one of her subordinates to get up to speed rather than updating Sanow himself.

42) Sanow felt as if she were being punished for having taken protected leave under the FMLA and the ADA.

43) Robbins did not speak to Sanow for the rest of the day on March 6, 2017.

44) Sanow was upset by this negative reaction to her medical leave, and met with Ulmer that same day to discuss her serious concerns regarding her meeting with Robbins and Nelson.

45) Ulmer merely stated that she would check into whether this was proper protocol upon a return from leave.

46) Sanow met with Robbins again on March 7, 2017, for their regularly-scheduled weekly one-on-one meeting, during which Robbins told her that he wanted to talk to her about their meeting the day prior.

47) Robbins was still clearly disgusted with Sanow, and continued to criticize her by telling Sanow that one of her co-workers had to put in a lot of extra time due to her leave of absence.

48) Robbins accused Sanow of being irresponsible and not looking out for her team by going on FMLA leave without first providing team status updates, information on projects she was involved in, and making prior arrangements for the work.

49) Robbins also warned Sanow that she needed to rebuild a lot of relationships

due to her leave of absence, claiming her team was happier and more positive while she was gone.

50) Rather than talking to Sanow about how she was doing or getting her up to speed on her projects so she could successfully resume her duties, Robbins repeatedly asked Sanow if she was "giving her notice."

51) During this conversation, Robbins placed Sanow under a great deal of pressure and stress, and continued to ask her if she was "giving her notice" so many times that Sanow told Robbins that she felt she had no choice.

52) Robbins ended their March 7, 2017, meeting when he directed Sanow to get her purse and he promptly walked her out the building.

53) Robbins told Sanow that Sammons would take care of her personal belongings and HR would be in touch regarding next steps.

54) After Robbins escorted Sanow out of the building, and while under extreme duress, Sanow drafted and submitted a resignation letter from her car, giving her two weeks' notice and describing her resignation as "unintentional."

55) Sanow never had an opportunity to perform the essential functions of her job upon her return to work at Sammons on March 6, 2017.

56) Upon Sanow's return to work, Sammons also never engaged in any conversations with her about whether she needed any reasonable accommodations to perform the essential functions of her job.

57) Robbins's actions towards Sanow were discriminatory and retaliatory.

7

58)     Sanow suffered an adverse employment action when Sammons forced her to resign her employment, resulting in a constructive discharge.

## COUNT ONE
## VIOLATION OF TITLE I OF THE AMERICANS WITH DISABILITIES ACT – DISPARATE TREATMENT

59)     Sanow realleges the above allegations to the same extent as if fully set forth herein.

60)     Sammons is an "employer" within the meaning of the ADA.

61)     Sammons is engaged in an "industry affecting commerce" within the meaning of the ADA and the Civil Rights Act of 1964.

62)     Due to Sanow's diagnosed mental health condition, she is an individual with a "disability" as that term is defined by the ADA.

63)     Sanow is a "qualified individual with a disability" under the ADA, 42 U.S.C. §12102 and §12111(8), as she is an individual with a disability who can, with or without reasonable accommodations, perform all of the essential functions of her position that she held at Sammons.

64)     Sammons knew of Sanow's disability.

65)     Sammons also perceived Sanow as having a disability.

66)     After Sanow disclosed her disability to representatives of Sammons, Sammons discriminated against Sanow because of her disability or perceived disability, eventually constructively discharging her on March 7, 2017, in violation of Section 12112 of Title I of the ADA.

67) Sammons treated Sanow differently than other employees after she returned to work from her medical leave of absence.

68) Sanow could have performed the essential functions of her job at Sammons at the time she was constructively discharged from Sammons.

69) Sanow's disability was a motivating factor or played a part in Sammons's decision to constructively discharge Sanow.

70) Sammons's actions toward Sanow on the basis of her disability constitute a discriminatory act prohibited by the ADA, 42 U.S.C. §12112.

71) The effect of the actions of Sammons complained of have been to deprive Sanow of equal employment opportunities and otherwise have adversely affected her status as an employee because of her disability or perceived disability.

72) The unlawful actions and practices complained of above by Sammons were intentional.

73) The unlawful actions and practices complained of above were done by Sammons with malice or reckless disregard or indifference to the federally protected rights of Sanow.

74) Sammons's discriminatory conduct towards Sanow caused her constructive discharge from her employment in violation of federal law.

75) Sammons's reasons for constructively discharging Sanow were pretextual.

76) As a result of the foregoing, Sanow is entitled to damages, including but not necessarily limited to, actual, consequential, and punitive damages, and recovery of

attorneys' fees, costs, and expenses incurred in this action.

## COUNT TWO
## VIOLATION OF TITLE I OF THE AMERICANS WITH DISABILITIES ACT – FAILURE TO REASONABLY ACCOMMODATE

77) Sanow realleges the above allegations to the same extent as if fully set forth herein.

78) Sammons failed to properly engage in the interactive process for reasonable accommodations and failed to make reasonable accommodations to the known physical/mental limitations of Sanow, as required under the ADA, 42 U.S.C. §12112(b)(5).

79) Sanow could have performed the essential functions of her job role at Sammons at the time she was constructively discharged from Defendant, either with or without reasonable accommodations.

80) Sammons's actions toward Sanow as well as Sammons's failure to act, on the basis of her disability, constitutes a discriminatory act prohibited by the ADA, 42 U.S.C. §12112(a).

81) Sammons's actions complained of have deprived Sanow of equal employment opportunities and have otherwise adversely affected her status as an employee because of her disability or perceived disability.

82) Sammons's unlawful actions and practices complained of were intentional.

83) Sammons's unlawful actions and practices complained of above were done with malice or reckless disregard or indifference to Sanow's federally protected rights.

84) Sammons's discriminatory conduct towards Sanow resulted in and caused Sanow's constructive discharge from her employment in violation of federal law.

85) Sammons's reasons for constructively discharging Sanow were pretextual.

86) As a result of the foregoing, Sanow is entitled to damages, including but not necessarily limited to, actual, consequential and punitive damages, and recovery of attorneys' fees, costs and expenses incurred in this action.

## COUNT THREE
## INTERFERENCE AND RETALIATION UNDER
## TITLE I OF THE AMERICANS WITH DISABILITIES ACT

87) Sanow realleges the above allegations to the same extent as if fully set forth herein.

88) The ADA contains specific provisions which prohibit retaliation and coercion. 42 U.S.C. §12203(a) – (c).

89) A request for an accommodation constitutes protected activity under the ADA and it is therefore unlawful to retaliate against an employee who makes such a request.

90) A leave of absence is a type of accommodation under the ADA and, as such, is a right granted or protected by the ADA.

91) Sammons unlawfully discriminated and retaliated against Sanow in violation of the ADA when her supervisor scolded her for having requested and then taken a leave of absence for her disability, and when he later placed her under extreme, unreasonable, and undue pressure that forced her to resign, and resulted in Sanow's

constructive discharge.

92) The ADA makes it unlawful to coerce, intimidate, threaten or interfere with any individual in the exercise or enjoyment of, or on account of his or her having exercised or enjoyed . . . any right granted or protected by the ADA. 42 U.S.C. §12203(b).

93) Sammons unlawfully interfered with, coerced, threatened and intimidated Sanow for exercising or enjoying any right protected by the ADA when on the heels of her return from a leave of absence for her disability, threatened, coerced, and intimidated her through Robbins extreme conduct with intent to force her to resign, which in fact caused her to unwillingly resign, and constituted a constructive discharge.

94) Sammons's unlawful employment practices complained of above were intentional.

95) Sammons's unlawful employment practices complained of above were done with malice or reckless indifference to the federally protected rights of Sanow.

96) As a result of the foregoing, Sanow is entitled to damages, including but not necessarily limited to, actual, consequential and punitive damages, and recovery of attorneys' fees, costs and expenses incurred in this action.

## COUNT FOUR
## VIOLATIONS OF THE FMLA - INTERFERENCE, ENTITLEMENT AND RETALIATION

97) Sanow realleges the above allegations to the same extent as if fully set forth herein.

98) The FMLA makes it unlawful for an employer to "interfere with, restrain, or deny the exercise of or the attempt to exercise, any right provided under this subchapter." 29 U.S.C. §2615(a)(1).

99) The FMLA also makes it unlawful for any employer "to discharge or in any other manner discriminate against any individual for opposing any practice made unlawful by this subchapter." 29 U.S.C. §2615(a)(2).

100) Sammons violated the FMLA by constructively discharging Sanow for exercising her FMLA rights and by otherwise interfering with her FMLA rights, specifically including but not limited to, retaliating against her for requesting and taking FMLA eligible leave to which she was entitled.

101) Sammons violated the FMLA by interfering with Sanow's rights under the FMLA, including failing to reinstate Sanow after her FMLA leave concluded and instead constructively terminating her employment.

102) Sanow suffered a materially adverse employment action when Sammons forced her under extreme stress and duress to resign from her employment unwillingly, resulting in Sanow's constructive discharge.

103) Sanow's FMLA leave was the reason for Sammons's repeated hostile

13

requests, through Robbins, that she resign, which in fact caused her, under duress, to tender her resignation.

104) By causing Sanow to resign her employment under duress, Sammons interfered with, restrained, and/or denied Sanow's exercise of her rights under the FMLA.

105) Sammons is liable to Sanow for damages that she suffered as a result of Sammons's unlawful actions, including but not limited to: front and back pay (including interest), back benefits, liquidated damages, equitable relief, attorneys' fees, reasonable expert witness fees and costs of litigation.

## COUNT FIVE
## NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS

106) Sanow realleges the above allegations to the same extent as if fully set forth herein.

107) The foregoing conduct by Sammons constitutes negligent infliction of emotional distress.

108) Sammons's conduct was negligent.

109) Sanow suffered emotional distress.

110) Sammons's conduct was the cause of Sanow's emotional distress.

111) Sanow suffered a physical manifestation of the distress.

112) As a result of the foregoing, Sanow is entitled to recover for damages, including but not necessarily limited to actual, consequential and punitive damages.

## COUNT SIX
## INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

113) Sanow realleges the above allegations to the same extent as if fully set forth herein.

114) The foregoing conduct by Sammons constitutes intentional infliction of emotional distress.

115) Sammons's conduct was extreme and outrageous.

116) Sammons's conduct was made with the intent to cause, or in disregard of a substantial probability of causing, severe emotional distress to Sanow.

117) Sanow suffered severe emotional distress as a result of Sammons's actions.

118) As a result of the foregoing, Sanow is entitled to recover damages, including but not necessarily limited to actual, consequential, and punitive damages.

## DEMAND FOR JURY TRIAL

119) Sanow hereby requests a trial by jury on all of the issues of fact in this action and on the merits of her claims.

## PRAYER FOR RELIEF

WHEREFORE, Sanow prays for judgment against Sammons as follows:

A. For compensatory damages in such amount as the evidence at trial may show to make Sanow whole by providing appropriate back pay, benefits, front pay, liquidated damages as allowed by law, and pre-judgement interest as a result of Sammons's unlawful employment actions in amounts to be determined by the jury;

B. For damages in such amount as the evidence at trial may show to make

Sanow whole by providing for appropriate compensation for past and future losses arising from the pain, stress, anxiety, humiliation, and embarrassment suffered by Sanow as a result of Sammons's unlawful employment practices in amounts to be determined by the jury;

C. For punitive damages where permitted by law, in such an amount as the evidence at trial may show in amounts to be determined by the jury; and

D. For her costs and disbursements incurred herein, including reasonable attorneys' fees, and for any such other and further relief as the Court may deem just and proper.

Dated December 27, 2018.

LYNN, JACKSON, SHULTZ & LEBRUN, P.C.

By: _____
Jennifer Suich Frank
909 St. Joseph Street, Suite 800
Rapid City, SD 57701-3301
Telephone: 605-342-2592
Fax: 605-341-5185
Email: jfrank@lynnjackson.com

-and-

Cheri S. Raymond
110 N. Minnesota Ave., Ste. 400
Sioux Falls, SD 57104
Telephone: 605-332-5999
Fax: 605-332-4249
Email: craymond@lynnjackson.com

*Attorneys for Plaintiff*

JS 44 (Rev. 06/17)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. *(SEE INSTRUCTIONS ON NEXT PAGE OF THIS FORM.)*

## I. (a) PLAINTIFFS
CARIE C. SANOW

**(b)** County of Residence of First Listed Plaintiff: **Lincoln**
*(EXCEPT IN U.S. PLAINTIFF CASES)*

**(c)** Attorneys *(Firm Name, Address, and Telephone Number)*
Jennifer S. Frank | Cheri S. Raymond
Lynn, Jackson, Shultz & Lebrun, P.C., 110 N. Minnesota Ave., Ste. 400,
Sioux Falls, SD 57104 - (605) 332-5999

## DEFENDANTS
SAMMONS FINANCIAL GROUP, INC.

18-4173

County of Residence of First Listed Defendant: _____
*(IN U.S. PLAINTIFF CASES ONLY)*
NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED.

Attorneys *(If Known)*

## II. BASIS OF JURISDICTION *(Place an "X" in One Box Only)*

- ☐ 1 U.S. Government Plaintiff
- ☐ 2 U.S. Government Defendant
- ☒ 3 Federal Question *(U.S. Government Not a Party)*
- ☐ 4 Diversity *(Indicate Citizenship of Parties in Item III)*

## III. CITIZENSHIP OF PRINCIPAL PARTIES *(Place an "X" in One Box for Plaintiff and One Box for Defendant)*
*(For Diversity Cases Only)*

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☒ 1 | ☐ 1 | Incorporated *or* Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated *and* Principal Place of Business In Another State | ☐ 5 | ☒ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT *(Place an "X" in One Box Only)*

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | ☐ 625 Drug Related Seizure of Property 21 USC 881 | ☐ 422 Appeal 28 USC 158 | ☐ 375 False Claims Act |
| ☐ 120 Marine | ☐ 310 Airplane | ☐ 365 Personal Injury - Product Liability | ☐ 690 Other | ☐ 423 Withdrawal 28 USC 157 | ☐ 376 Qui Tam (31 USC 3729(a)) |
| ☐ 130 Miller Act | ☐ 315 Airplane Product Liability | ☐ 367 Health Care/ Pharmaceutical Personal Injury Product Liability | | | ☐ 400 State Reapportionment |
| ☐ 140 Negotiable Instrument | ☐ 320 Assault, Libel & Slander | | | **PROPERTY RIGHTS** | ☐ 410 Antitrust |
| ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 330 Federal Employers' Liability | | | ☐ 820 Copyrights | ☐ 430 Banks and Banking |
| ☐ 151 Medicare Act | ☐ 340 Marine | ☐ 368 Asbestos Personal Injury Product Liability | | ☐ 830 Patent | ☐ 450 Commerce |
| ☐ 152 Recovery of Defaulted Student Loans (Excludes Veterans) | ☐ 345 Marine Product Liability | | | ☐ 835 Patent - Abbreviated New Drug Application | ☐ 460 Deportation |
| ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 350 Motor Vehicle | **PERSONAL PROPERTY** | **LABOR** | ☐ 840 Trademark | ☐ 470 Racketeer Influenced and Corrupt Organizations |
| ☐ 160 Stockholders' Suits | ☐ 355 Motor Vehicle Product Liability | ☐ 370 Other Fraud | ☐ 710 Fair Labor Standards Act | **SOCIAL SECURITY** | ☐ 480 Consumer Credit |
| ☐ 190 Other Contract | ☐ 360 Other Personal Injury | ☐ 371 Truth in Lending | ☐ 720 Labor/Management Relations | ☐ 861 HIA (1395ff) | ☐ 490 Cable/Sat TV |
| ☐ 195 Contract Product Liability | ☐ 362 Personal Injury - Medical Malpractice | ☐ 380 Other Personal Property Damage | ☐ 740 Railway Labor Act | ☐ 862 Black Lung (923) | ☐ 850 Securities/Commodities/ Exchange |
| ☐ 196 Franchise | | ☐ 385 Property Damage Product Liability | ☐ 751 Family and Medical Leave Act | ☐ 863 DIWC/DIWW (405(g)) | ☐ 890 Other Statutory Actions |
| | | | | ☐ 864 SSID Title XVI | ☐ 891 Agricultural Acts |
| | | | | ☐ 865 RSI (405(g)) | ☐ 893 Environmental Matters |
| | | | | | ☐ 895 Freedom of Information Act |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | ☐ 790 Other Labor Litigation | **FEDERAL TAX SUITS** | ☐ 896 Arbitration |
| ☐ 210 Land Condemnation | ☐ 440 Other Civil Rights | **Habeas Corpus:** | ☐ 791 Employee Retirement Income Security Act | ☐ 870 Taxes (U.S. Plaintiff or Defendant) | ☐ 899 Administrative Procedure Act/Review or Appeal of Agency Decision |
| ☐ 220 Foreclosure | ☐ 441 Voting | ☐ 463 Alien Detainee | | ☐ 871 IRS—Third Party 26 USC 7609 | |
| ☐ 230 Rent Lease & Ejectment | ☐ 442 Employment | ☐ 510 Motions to Vacate Sentence | | | ☐ 950 Constitutionality of State Statutes |
| ☐ 240 Torts to Land | ☐ 443 Housing/ Accommodations | ☐ 530 General | | | |
| ☐ 245 Tort Product Liability | ☒ 445 Amer. w/Disabilities - Employment | ☐ 535 Death Penalty | **IMMIGRATION** | | |
| ☐ 290 All Other Real Property | ☐ 446 Amer. w/Disabilities - Other | **Other:** | ☐ 462 Naturalization Application | | |
| | ☐ 448 Education | ☐ 540 Mandamus & Other | ☐ 465 Other Immigration Actions | | |
| | | ☐ 550 Civil Rights | | | |
| | | ☐ 555 Prison Condition | | | |
| | | ☐ 560 Civil Detainee - Conditions of Confinement | | | |

## V. ORIGIN *(Place an "X" in One Box Only)*

☒ 1 Original Proceeding  ☐ 2 Removed from State Court  ☐ 3 Remanded from Appellate Court  ☐ 4 Reinstated or Reopened  ☐ 5 Transferred from Another District *(specify)*  ☐ 6 Multidistrict Litigation - Transfer  ☐ 8 Multidistrict Litigation - Direct File

## VI. CAUSE OF ACTION
Cite the U.S. Civil Statute under which you are filing *(Do not cite jurisdictional statutes unless diversity)*:
42 USC 12101 et. seq., 29 USC 2601 et. seq.
Brief description of cause:
Claims based on the ADA and the FMLA

## VII. REQUESTED IN COMPLAINT:
☐ CHECK IF THIS IS A CLASS ACTION UNDER RULE 23, F.R.Cv.P.
**DEMAND $**
CHECK YES only if demanded in complaint:
**JURY DEMAND:** ☒ Yes ☐ No

## VIII. RELATED CASE(S) IF ANY
*(See instructions):*
JUDGE _____  DOCKET NUMBER _____

DATE: 12/27/2018
SIGNATURE OF ATTORNEY OF RECORD: *Cheri S. Raymond*

**FOR OFFICE USE ONLY**

RECEIPT # _____  AMOUNT _____  APPLYING IFP _____  JUDGE _____  MAG. JUDGE _____